# The Penobscot Fish Company *vs.* The Western Union Telegraph Company.

Third Judicial District, New Haven, June Term, 1916.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

Chapter 149 of the Public Acts of 1903 provides that no action to re-
cover damages for an injury to the person, or to personal property
caused by negligence, shall be brought but within one year from
the date of the injury or neglect complained of. *Held* that an
action against a telegraph company to recover damages for a
pecuniary loss caused by its alleged negligence in changing a tel-
egraphic order for one barrel of lobsters into an order for ten barrels,
during its transmission, was not one for an injury to personal
property within the meaning of the statute.

By receiving for transmission by telegraph an order for merchandise,
which, on its face, requires the addressee to accept or reject the
proposal, a telegraph company owes to the addressee as well as to
the sender of the message the duty of exercising reasonable care to
deliver it in the form in which it was accepted for transmission.

Such an obligation, if incurred in this State by the acceptance here of a
message of that character, may be enforced here, although the
message was addressed to a nonresident and was received by him
in his home State.

Telegraph companies are essentially *quasi*-public agencies for carrying
on commerce, to which every one is virtually compelled by business
necessities to resort; and in view of this relation and of the character
of their undertaking, their responsibilities are not adequately
measured by treating them as if they were merely private mes-
sengers employed casually from time to time by senders of tel-
egrams to transmit each separate message.

Argued June 14th—decided July 27th, 1916.

Action to recover damages arising from an error in
a telegraphic message alleged to have been caused by
the negligence of the defendant in its transmission,
brought to and tried by the Court of Common Pleas in
New Haven County, *Wolfe, J.;* facts found and judg-
ment rendered for the plaintiff for $125, and appeal by
the defendant. *No error.*

The complaint alleges, and the trial court has found, that in August, 1912, Messrs. Schoenberger and Sons of New Haven delivered to the defendant at its New Haven office a collect message addressed to the plaintiff at Rockland, Maine, ordering one barrel of lobsters; that by the defendant's negligence the order was changed in transmission, so that when delivered it called for ten barrels of lobsters; that the plaintiff filled the order as delivered; that Schoenberger and Sons refused to receive the ten barrels of lobsters, and that they were sold for the plaintiff's account at a loss, which is sought to be recovered in this action.

The action was commenced in 1916, and the answer set up a general denial, coupled with the special defense that the cause of action did not arise within one year next before the commencement of the action.

*Frederick H. Wiggin* and *James Dwight Dana,* for the appellant (defendant).

*Frederick L. Perry,* for the appellee (plaintiff).

BEACH, J. The assignments of error present two questions of law: whether the action is barred by General Statutes, § 1119, as amended by chapter 149 of the Public Acts of 1903, p. 114, and whether plaintiff, being the receiver of the telegram and not the sender, is entitled to sue the defendant for injuries due to its negligence in failing to correctly transmit the order for one barrel of lobsters.

Chapter 149 of the Public Acts of 1903 provides that "no action to recover damages for injury to the person, or for an injury to personal property caused by negligence, shall be brought but within one year from the date of the injury or neglect complained of." As pointed out in *Miner* v. *McNamara,* 82 Conn. 578, 74 Atl. 933, the effect of this statute is to create a special

class carved out of the larger class of actions described in General Statutes, § 1111, and to subject this special class to a shorter limitation. The earmark of the special class is that the injury complained of, whether to person or property, should be caused by negligence, that is, by a breach of a legal duty owed by the defendant to the person or property injured. In this case, however, no recovery is sought for an injury to any property toward which the defendant owed a duty of exercising care. It is an action for damages at large, and not for injury to any specific property, and, therefore, cannot be within the special class of actions carved out by the Act of 1903.

The defendant's claim, that it is not in any event liable to the receiver of a telegram for damages caused by its negligence in failing to correctly transmit the order, is based on the theory that a telegraph company is the agent of the sender of the message, and not of the receiver; or, as some of the cases hold, the agent of that party who first selects the telegraph as a means of completing a proposed contract.

No doubt the telegraph company is the agent of the sender to the extent of its actual authority, to wit, to transmit and deliver the message in the form in which it is received for transmission. But some of the cases relied on by the defendant go further and hold that the receiver of the message, not being the party who first selected that means of communication, has a right to rely upon the apparent authority of the telegraph company to submit a proposed contract in the form in which it is actually delivered, so that when the receiver accepts and fills an erroneously transmitted order for merchandise, the sender is bound to a contract which he never proposed. The result is that the receiver must first enforce the contract or recover damages for its nonperformance, and then the sender may recover from

the telegraph company for the loss caused by its negligence. *Sherrerd* v. *Western Union Tel. Co.*, 146 Wis. 197, 131 N. W. 341; *Ayer* v. *Western Union Tel. Co.*, 79 Me. 493, 10 Atl. 495. This combination of a contract, without a meeting of minds, and its resultant circuity of action, seems to result from ignoring the essential fact that telegraph companies are quasi-public agencies for carrying on commerce. They are not only public service corporations, but because their business is commerce, they are specially privileged among that privileged class. Thus the several States cannot exclude them from any part of their respective territories; *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1; and they cannot be prevented by the State from making use of its highways. *Essex* v. *New England Tel. Co.*, 239 U. S. 313, 36 Sup. Ct. 102. They resemble common carriers, not only because they hold themselves out to serve the public at large, but also because the common necessities of intercourse and business compel the public to make use of the facilities which their special privileges enable them to offer. In view of the character of their business and their relation to the public, their responsibilities are not adequately measured by treating them as if they were merely private messengers employed casually from time to time by senders of messages to transmit each separate message. They owe a duty to the public, not only because of their delegated authority to carry on a business in the nature of a governmental activity, but also because, in conducting that business, they necessarily invite the public, including receivers as well as senders of telegrams, to rely upon the telegraph as an agency for the speedy transaction of business.

Confining our decision to the case actually presented, we hold that when a telegraph company accepts for transmission an order for merchandise which on its face

calls upon the receiver to accept or reject a proposed contract, it owes to the receiver as well as to the sender the duty of exercising reasonable care to deliver it in the form in which it was accepted for transmission.

The responsibility to the receiver may be based either upon the duty, owed to every member of the public directly interested, to exercise reasonable care in conducting a business so largely affected with a public interest, or upon the obligation arising from the general invitation to the public to rely upon the telegraph as a means of communication. Bigelow on Torts (8th Ed.) p. 130; 3 Sedgwick on Damages (9th Ed.) § 878; *Herron* v. *Western Union Tel. Co.*, 90 Iowa, 129, 134, 57 N. W. 696; *Reed* v. *Western Union Tel. Co.*, 135 Mo. 661, 668, 37 S. W. 904; *Elwood* v. *Western Union Tel. Co.*, 45 N. Y. 549; *Stewart, Morehead & Co.* v. *Postal Telegraph-Cable Co.*, 131 Ga. 31, 61 S. E. 1045; *McKee* v. *Western Union Tel. Co.*, 158 Ky. 143, 164 S. W. 348, 51 L. R. A. (N. S.) 439 and cases cited in note.

The defendant also claims that as the telegram was delivered to, and acted upon by, the plaintiff, in the State of Maine, the legal effect of that transaction is to be determined by the law of Maine. We need not, however, decide whether the plaintiff might have enforced against Schoenberger and Sons in the courts of Connecticut a contract to take and pay for ten barrels of lobsters. Even if that were conceded, it would still be quite clear that the plaintiff could also enforce against the defendant in the Connecticut courts the obligation which was incurred in Connecticut by the defendant's acceptance for transmission of a message which, on its face, called upon the plaintiff to accept or reject a proposed contract.

There is no error.

In this opinion the other judges concurred.